IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Patrick Delvon Harris, #257350, | ) | |
|---|---|---|
| | ) | C/A No. 0:08-3964-HMH-PJG |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| McKither Bodison, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

The petitioner, Patrick Delvon Harris ("Harris"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for and Report and Recommendation on the respondent's amended motion for summary judgment.[1] (Docket Entry 51.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (Docket Entry 53.) Harris filed a response in opposition to the respondent's motion. (Docket Entry 55.) Having carefully considered the parties' submissions and the record in this case, the court finds that the respondent's amended motion for summary judgment should be granted.

---

[1] The court issued an order dated January 13, 2010 in which it denied Harris's motion for default (Docket Entry 47) and motion for summary judgment (Docket Entry 45). Additionally, the order denied respondent's motion for summary judgment (Docket Entry 38) at that time with leave to re-file it within thirty days to address Harris's fifth ground for habeas relief. (See Opinion and Order, Docket Entry 49.) The respondent filed an amended motion for summary judgment and amended return on February 12, 2010. (Docket Entries 51 & 52.)

## BACKGROUND

Harris was indicted in June 1998 in Richland County for armed robbery (98-GS-40-30939). (Docket Entry 39-6 at 27-8.) On February 26, 1999, the Solicitor for the Fifth Judicial Circuit filed written notice of his intent to seek a sentence of life imprisonment without the possibility of parole. (Docket Entry 39-6 at 64.) Harris was represented by James L. Mann, II, Esquire, and on March 30-31, 1999, was tried by a jury and found guilty as charged.[2] (Docket Entry 39-5 at 28.) Because Harris had prior convictions for armed robbery, the circuit court sentenced Harris to life imprisonment without parole pursuant to S.C. Code Ann. § 17-25-45. (Docket Entry 39-5 at 103.)

Harris timely appealed. (Docket Entry 39-6 at 51.) On appeal, Harris was represented by Wanda H. Haile, Esquire, Senior Assistant Appellate Defender of the South Carolina Office of Appellate Defense. Harris raised the following issue: "The lower court erred in imposing the unconstitutional sentence of life without parole in appellant's case." (Docket Entry 39-7 at 4.) The South Carolina Supreme Court affirmed. (State v. Harris, 01-MO-021 (S.C. March 28, 2001); Docket Entry 39-9.)

Harris filed a *pro se* application for post-conviction relief on July 5, 2001 ("2001 PCR Action").[3] (Harris v. State of South Carolina, 01-CP-40-2762, Docket Entry 39-5 at 37-48.) In his application, Harris raised the following issues:

---

[2] According to the respondent, Harris was first tried before a jury during the week of March 15, 1999. This trial resulted in a mistrial due to the jury's inability to reach a verdict. (See Respt.'s Am. Mem. in Supp. of Mot. Summ. J., Docket Entry 52 at 2.)

[3] Harris filed a prior PCR action (00-CP-40-1764), the documents of which are not contained in the record before this court. As this application was filed during the pendency of Harris's direct appeal, however, it was dismissed without prejudice. (See Respt.'s Am. Mem. in Supp. of Mot. Summ. J., Docket Entry 52 at 5 n.5.)

*PJG*

1. Ineffective Assistance of Counsel

2. Lack of Subject Matter Jurisdiction

3. Sentence Violates Ex-post Facto Laws

4. Sentence Violates S.C. State Constitution Article XII, Sec. 2[.]

(Id. at 39.) The State filed a return on January 16, 2002. (Docket Entry 39-5 at 49-52.) On April 28, 2005, the PCR court held an evidentiary hearing at which Harris was present and testified and was represented by Cameron Littlejohn, Esquire. (Docket Entry 39-5 at 54 through Docket Entry 39-6 at 18.) At the outset of the hearing, Harris, through counsel, amended his application to narrow his allegations to the following:

1. Trial counsel was ineffective in that he did not procure a transcript of Applicant's first trial before proceeding with the Applicant's second trial.

2. The Applicant's defense counsel was ineffective in that he did inadequate preparation prior to the Applicant's first and second trials in that he failed to meet with the Applicant for any significant period of time and failed to review the discovery material with the Applicant.

3. The Applicant's sentence of life in prison without parole was imposed in violation of § 17-25-45, S.C. Code of Laws, in that the Applicant was not served with the State's Notice of Intent to Seek a Life Sentence.

4. Applicant's trial counsel was ineffective for not objecting to the trial court's improper charge to the jury concerning the elements of armed robbery.

5. The Applicant's appellate counsel was ineffective in that appellate counsel only raised one issue during the Applicant's appeal and failed to raise the issue of the trial court's denial of the Applicant's motion to dismiss trial counsel.

(Docket Entry 39-11.) The PCR court granted Harris post-conviction relief by order dated December 28, 2005. (Docket Entry 39-6 at 19-25.) Specifically, the PCR court ruled that (1) trial counsel was ineffective in failing to order a transcript of the first trial and that this failure was prejudicial to Harris when it "became apparent that there were obvious inconsistencies in crucial testimony";

(2) trial counsel was ineffective in that trial counsel's "preparation [with Harris] in a case involving life without parole was inadequate"; and (3) Harris's sentence was void because the State could not provide any evidence that it had complied with S.C. Code § 17-25-45(H) by providing Harris with written notice of the State's intent to seek a sentence of life without parole. (Id.)

The State filed a petition for a writ of certiorari with the South Carolina Supreme Court in which it presented the following questions:

> I. Did the PCR Court err in finding that trial counsel was ineffective in failing to consult with Respondent prior to both trials?
>
> II. Did the PCR Court err in finding that trial counsel was ineffective in failing to order the transcript of Respondent's first trial which resulted in a mistrial to be used for impeachment during Respondent's second trial?
>
> III. Did the PCR Court err in granting relief where Respondent was unable to show prejudice due to overwhelming evidence supporting Respondent's guilt?
>
> IV. Did the PCR Court err in granting a new trial based on State's failure to properly notice Respondent of intent to seek Life Without Parole?

(Docket Entry 52-1 at 3.) Harris, represented by Melisa White Gay, Esquire, filed a return in which he responded to each of the State's questions. (Docket Entry 52-2.) Subsequently, Harris moved to file a "supplemental amendment" to his return which presented the following question:

> 1. Did the trial court err in violating of [sic] Respondent's 6th and 14th Amendment rights, thereby denying him procedural Due Process, "trial structural error" during the trial, by giving an erroneous jury instruction to the jury that constructively amended his Grand Jury Indictment?

(Docket Entry 52-3 at 5.) The South Carolina Supreme Court granted Harris's motion to supplement his return. (Docket Entry 52-4.) Additionally, the Court granted the State's petition for a writ of certiorari, denied certiorari with regard to the issue raised in Harris's supplemental return, and ordered briefing on the remaining issues. (Id.) By published opinion filed March 10, 2008, the South Carolina Supreme Court reversed the PCR judge's order granting post-conviction relief and

reinstated Harris's conviction and sentence. Harris v. State, 659 S.E.2d 140 (S.C. 2008); (Docket Entry 39-17).

In April 2008, Harris filed a state habeas action with the South Carolina Supreme Court by document entitled "Motion for Consideration of Petition for Writ of Haebeus [*sic*] Corpus." (Docket Entry 39-12.) In his petition, Harris presented the following question:

> Did the trial court err in violation of petitioner's U.S. Const. 6th, and 14th Amendment Rights to Procedural Due Process/Due Process, by giving an erroneous jury instruction that constructively amended his Grand Jury indictment?

(Id. at 6.) The South Carolina Supreme Court denied Harris's petition by order dated May 7, 2008, stating that Harris "has not shown that 'there has been a violation which, in the setting, constitutes a denial of fundamental fairness shocking to the universal sense of justice.' " (Order, Docket Entry 39-13) (quoting Simpson v. State, 495 S.E.2d 429 (1998)).

## FEDERAL HABEAS ISSUES

In Harris's federal petition for a writ of habeas corpus, he raises the following issues:

**Ground One:** Failure to consult, communicate with, that created a conflict of interest, breakdown in adversial [*sic*] trial process.

**Ground Two:** Failure to request, obtain or obscure and secure previous trial transcripts for impeachment purposes.

**Ground Three:** Failure to render adequate, competent legal services by failing to order transcripts, research statute/laws, etc. because evidence was lack of overwhelming.

**Ground Four:** State's failure to legally properly serve 10-day written (actual) notice. See § 17-25-45(H) (LWOP).

**Ground Five:** Unconstitutional jury instructions that impermissibly constructively amended Grand Jury indictment.

(See Pet., Docket Entry 1 at 5-10.)

## DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of

*PJG*

a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Habeas Corpus Standard of Review**

   **1.     Generally**

In accordance with § 2254, claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

   **2.     Exhaustion Requirement**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or

barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth v. Ozmint, 377 F.3d 437 (4th Cir. 2004); see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**C.     Ground One**

   **1.     Procedural Bar**

As an initial matter, the respondent contends that a portion of Ground One is procedurally barred. Ground One alleges "[f]ailure to consult, communicate with, that created a conflict of interest, breakdown in adversial [*sic*] trial process." (Pet. at 6, Docket Entry 1 at 5.) The respondent argues that while Harris raised a claim during his PCR action alleging that counsel was ineffective for failing to consult or communicate with him, he did not assert that these alleged failures created a *conflict of interest or breakdown in the adversarial process*. (Respt.'s Am. Mem. in Supp. Summ. J, Docket Entry 52 at 8-9.) While Harris disputes this assertion, a review of the record reveals that this specific issue was not raised to the PCR court or the appellate courts. Therefore, to the extent that Harris is arguing trial counsel was ineffective based on a conflict of interest, this claim was not fairly presented to the South Carolina appellate courts and is procedurally barred from federal habeas review. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas

*PJG*

proceeding"). Thus, a portion of Ground One is not properly exhausted and is procedurally barred unless Harris can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," which he has not alleged. See Coleman, 501 U.S. at 750.

However, to the extent that Harris is alleging that trial counsel was ineffective for failing to consult or communicate with him, the court will address the merits of that issue as it is properly exhausted and preserved for federal habeas review.

**2.     Ineffective Assistance of Counsel**

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small

*PJG*

that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." United States v. Cronic, 466 U.S. 648, 659 (1984).

The South Carolina Supreme Court determined that Harris's claim that trial counsel was ineffective for failing to consult or communicate with him was without merit. Therefore, to prevail, Harris must demonstrate that the South Carolina Supreme Court unreasonably misapplied clearly established federal law as decided by the Supreme Court of the United States or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2).

The South Carolina Supreme Court, in reversing the PCR court, first observed that Harris testified that trial counsel met with him two or three times prior to the first trial and reviewed discovery materials with him during the first visit, but that counsel did not meet with him during the ten days between the mistrial and the second trial. (Docket Entry 39-17 at 7.) The opinion further noted that trial counsel testified that he " 'essentially treated [Harris's mandatory life case] like . . . the death penalty appointments [he] had in the past, which is that [he] just put everything else down' " and counsel stated that " 'there's no question in my mind that I had completely mastered the defense' and 'was prepared on what we had to do on [Harris's] part.' " (Id.) (alterations in original). Finally, the opinion pointed out while trial counsel admitted that he did not meet with Harris between the two trials, "he testified that he met with the solicitor's office at least three times in an attempt to negotiate a plea agreement," "the facts of the case were fresh on his mind during the second trial," and "there were no additions to the discovery materials between the first and second trials." (Id.) Accordingly, the South Carolina Supreme Court found that "trial counsel's testimony refuted Harris's allegations and directly contradicts the PCR judge's finding." (Id.) The state Supreme Court specifically found that based on the evidence, "there is no question that counsel met

with Harris on several occasions prior to the first trial" and noted that the fact that these meetings may have been brief is not alone indicative of inadequate trial preparation. (Id. at 8.) The Court also found that Harris failed to "offer any evidence or argument as to how counsel's alleged lack of preparation prejudiced him." (Id.) Finally, the Court determined that the PCR judge failed to state how the result of the trial would have differed if counsel had spent more time with Harris or provided him a copy of the discovery materials. (Id.) The South Carolina Supreme Court therefore held that the PCR court erred in finding that trial counsel was ineffective based on an alleged failure to consult with Harris resulting in inadequate preparation. (Id. at 9.)

Harris argues that the South Carolina Supreme Court misapplied clearly established federal law in deciding this issue.[4] However, he does not point to any specific United States Supreme Court case law that the South Carolina Supreme Court allegedly misapplied with regard to counsel's alleged inadequate preparation. See 28 U.S.C. § 2254(d)(1) (stating that a writ for habeas corpus shall not be granted unless the state's judgment was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States"). After a thorough review of the record and the filings in this matter, the court finds that Harris cannot demonstrate that the South Carolina Supreme Court unreasonably misapplied clearly established federal law in rejecting this claim or that the Court made objectively unreasonable factual findings. See Williams v. Taylor, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Moreover, even if trial counsel was deficient, based on the record before the court Harris cannot demonstrate that he was prejudiced as a result of any alleged deficiency. Accordingly, Harris cannot meet the standard enunciated under

---

[4] In a memorandum attached to Harris's Petition and in his memorandum in support of his cross-motion for summary judgment, he also appears to present a multifarious array of additional reasons that his counsel was ineffective. However, these reasons were not presented to the state appellate courts and are therefore procedurally barred. See Picard, 404 U.S. at 275-76.

Strickland. Strickland, 466 U.S. at 687. Therefore, Harris is not entitled to federal habeas relief on this ground.

**D.     Ground Two**

In Ground Two, Harris alleges that counsel was ineffective in failing to request and obtain the previous trial transcript to impeach witnesses during his second trial. In rejecting this claim, the South Carolina Supreme Court first observed that Harris did not present a copy of the transcript during the PCR hearing. (Docket Entry 39-17 at 9.) The state Supreme Court acknowledged that the audio tapes had been destroyed before his PCR hearing occurred. However, it noted that Harris had previously requested the transcript on at least two occasions approximately one month after his second trial, and that PCR counsel had sufficient time to request the transcript prior to the tapes' destruction, as he was appointed within three years of the mistrial. (Id. at 9-10) (citing Rule 607(i), SCACR (2005) ("[A] court reported shall retain the primary and backup tapes of a proceeding for a period of at least three years (3) after the date of the proceeding, and the court reporter may reuse of destroy the tapes after the expiration of that period.")). Based on these findings regarding Harris's ample opportunities to obtain the transcript, the state Supreme Court concluded, "Because it was incumbent upon Harris to provide the PCR judge with a copy of the transcript in order show that he was prejudiced by its absence at the second trial, Harris did not meet his burden to prove that trial counsel was deficient and that the result of his trial would have been different but for this alleged deficiency." (Id. at 10.) Further, the Court found Harris's argument that the transcript would have aided the defense to be speculative. (Id. at 10-11.)

Furthermore, the state Supreme Court found that even if Harris could demonstrate that counsel was deficient, he could not demonstrate prejudice. In reaching this conclusion, the Court observed that counsel testified that (1) in preparation for the second trial, counsel concentrated on

his detailed notes from the first trial, (2) counsel did not try a case between the two trials; therefore, the first trial was fresh in his mind, and (3) counsel did not believe the transcript would assist with cross-examination. (Id.) The Court also found that there was overwhelming evidence supporting Harris's guilt. (Id. at 12-14.) Further, the Court stated that counsel testified as to the two discrepancies that occurred between the trials; however, both of these discrepancies were exposed during the trial either through witness admission or cross-examination. (Id. at 11.) Investigator Barnes explained in an *in camera* hearing during the first trial that he was uncertain whether Harris admitted his involvement when he revealed the identities of the others involved in the robbery, but in the second trial the investigator acknowledged an error in the first testimony and testified that Harris admitted to his involvement in the crime. (Id.) Deputy Livingston testified in the first trial that Harris stated, "You got me" when he was apprehended, but at the second trial he testified that Harris stated, "You got me. I did it. You got me." (Id.) At the PCR hearing, counsel testified that he highlighted this discrepancy. (Id.) Finally, the state Supreme Court found that the failure to obtain the transcript was inconsequential due to the fact that Deputy Christophel, who apprehended Harris with Deputy Livingston and was unavailable for the first trial, testified at the second trial that upon apprehending Harris he stated "You've got me. I did it. You got me." (Id.)

Harris argues that the failure to obtain the transcript prejudiced his ability to fully impeach the witnesses, to prevent the witnesses from providing perjurious testimony, or to prevent the prosecutor from rehabilitating the witness. Harris contends that the transcripts could have created "a cloud of substantial doubt . . . that could have possibly changed the outcome during the trial." (Docket Entry 45-1 at 4.) While Harris cites to numerous federal cases in support of his argument with regard to Ground Two, the United States Supreme Court case law that Harris appears to rely on can be categorized as follows: (1) cases providing that an accused has a Sixth Amendment right

to confront the witnesses against him, <u>Douglas v. State of Alabama</u>, 380 U.S. 415 (1965); (2) cases addressing a state's duty to provide to provide an indigent with a transcript of prior proceedings when the transcript is needed for an effective defense or appeal, see <u>Britt v. North Carolina</u>, 404 U.S. 226, 228 (1971); and (3) cases providing that a prosecutor has a duty to disclose evidence, see <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

After a thorough review of the record and the filings in this matter, the court finds that Harris cannot demonstrate that the South Carolina Supreme Court unreasonably misapplied clearly established federal law in rejecting this claim or that the Court made objectively unreasonable factual findings. See <u>Williams v. Taylor</u>, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Harris has failed to demonstrate that trial counsel's failure to obtain the previous trial transcript denied him the right to confront the witnesses against him, prevented counsel from effectively defending him, or resulted from the prosecutor's failure to disclose evidence.

Moreover, even if trial counsel was deficient, based on the record before the court Harris cannot demonstrate that he was prejudiced as a result of any alleged deficiency, as Harris has not established that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Accordingly, Harris cannot meet the standard enunciated under <u>Strickland</u>. <u>Id.</u> at 687. Therefore, Harris is not entitled to federal habeas relief on this ground.

**E.  Ground Three**

In Ground Three, Harris asserts claims of ineffective assistance of counsel for "[f]ailure to render adequate, competent legal services by failing to order transcripts, research statute/laws, etc. because evidence was lack of overwhelming." (Pet. at 9, Docket Entry 1 at 8.) To the extent that Harris is alleging that trial counsel was ineffective for failing to order transcripts, this claim is

essentially the claim presented in Ground Two. Therefore, for the reasons stated above, Harris is not entitled to habeas relief on this ground.

However, Harris also appears to be attempting to raise a claim of ineffective assistance of counsel for failing to perform adequate research. Further, based on a review of Harris's memorandum of law attached to his Petition, he appears to be attempting to allege that counsel was ineffective for numerous other reasons, including for allegedly failing to (1) file motions to suppress, (2) challenge the sufficiency of evidence, (3) develop and preserve issues for appeal, (4) investigate and interview the state's witnesses, and (5) request a jury instruction on a lesser included offense. (Docket Entry 1-3 at 7-8.) A review of the record reveals that these specific issues were not raised to the PCR court or the appellate courts. Therefore, these claims were not fairly presented to the South Carolina appellate courts and are procedurally barred from federal habeas review. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard, 404 U.S. at 275-76 (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"). Thus, these claims are not properly exhausted and is procedurally barred unless Harris can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," which he has not alleged. See Coleman, 501 U.S. at 750.

**F. Ground Four**

Harris's fourth ground for relief alleges that the state failed to comply with S.C. Code Ann. § 17-25-45(H), which sets forth the notice requirements when a solicitor seeks a sentence of life

without parole. "It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Therefore, to the extent that Harris argues that the state courts misapplied state law, his argument fails.

To the extent that Harris contends that the alleged failure to comply with § 17-25-45(H) violated his Fourteenth Amendment right to due process, this issue is also barred from federal habeas review. As stated above, to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." Picard, 404 U.S. at 275-76. For state courts to have a "fair opportunity" to hear a federal claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (*per curiam*) (internal citations omitted). Since Harris did not raise a federal constitutional issue pertaining to this claim in state court, he is procedurally barred from raising this issue for the first time on federal habeas review, unless he can demonstrate sufficient cause for the default and prejudice, or that a fundamental miscarriage of justice will occur by failing to consider this claim. See Duncan v. Henry, 513 U.S. 364 (1995) (reversing a grant of a writ of habeas corpus where a petitioner in his direct appeal claimed only that the ruling violated state evidentiary rules and not a federal constitutional right); Lawrence, 517 F.3d at 714; Coleman, 501 U.S. at 750. Harris has not demonstrated, or even alleged, sufficient cause for the default and prejudice, or that a fundamental miscarriage of justice will occur by failing to consider this claim; therefore, this claim is procedurally barred from federal habeas review.

To the extent that Harris contends that the trial counsel was ineffective in failing to investigate proper compliance with § 17-25-45(H) and object at sentencing, these issues are similarly barred from federal habeas review as these claims were not fairly presented to the state courts. See

Picard, 404 U.S. at 275-76. Accordingly, Harris is procedurally barred from raising these issues absent demonstrating sufficient cause for the default and prejudice, or that a fundamental miscarriage of justice will occur by failing to consider these claims, which Harris has not demonstrated or even alleged. Coleman, 501 U.S. at 750.

G. **Ground Five**

In Ground Five, Harris alleges that unconstitutional jury instructions constructively amended the grand jury indictment. This type of claim is generally raised by a federal defendant asserting a claim under the Fifth Amendment. However, Harris has explicitly stated that he is not raising a Fifth Amendment claim; rather, he argues that this claim violates his Sixth and Fourteenth Amendment rights to due process.[5] Specifically, Harris argues that he was indicted for armed robbery and the trial court's jury instructions added "immaterial elements of criminal conspiracy § 16-17-410." (Docket Entry 1-3 at 11.)

It has long been recognized that the United States Constitution does not require a State to charge a person by indictment. See Hurtado v. California, 110 U.S. 516, 538 (1884). Further, "[a]lleged errors in state court jury instructions . . . are matters of state law and do not provide a basis for federal habeas corpus relief unless the instructions infect the entire trial such that due process has been denied." Temoney v. Sapp, C/A No. 0:06-1983-CMC-BM, 2007 WL 752200, *8 (D.S.C. Mar. 1, 2007) (unpublished) (citing Nagye v. Seifert, No. 04-710, 2005 WL 2405946 at *7-8 (S.D. W. Va. Sept. 29, 2005) and Gradison v. Corcoran, No. 00-5, 2000 WL 1012953 at *11-12 (4th Cir. July 24, 2000)); see also Ashford v. Evans, 780 F.2d 405, 407 (4th Cir. 1985) ("[D]eficiencies in state court

---

[5] To the extent that Harris is attempting to assert a claim for ineffective assistance of counsel based on this allegation, such a claim is procedurally barred from federal habeas review as this claim was not fairly presented to the state courts. See Picard, 404 U.S. at 275-76; Coleman, 501 U.S. at 750.

indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process.").

As an initial matter, a review of the record reveals that the trial court did not include in the jury instructions charges related to criminal conspiracy, nor was Harris convicted of criminal conspiracy. It appears that the instructions Harris contends violated his constitutional rights are the instructions the trial court issued concerning "hand of one, hand of all" accomplice liability. (Docket Entry 39-5 at 19.) Harris argues that this instruction impermissibly expanded his indictment charging him with armed robbery.

Harris has failed to demonstrate that his due process right to notice of the charges against him was violated by the trial judge's charge on the law, as it was consistent with the facts presented and with state law. South Carolina law provides:

> Under the hand of one is the hand of all theory [of accomplice liability], one who joins with another to accomplish an illegal purpose is liable for everything done by his confederate incidental to the execution of the common design and purpose. A defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense.

State v. Thompson, 647 S.E.2d 702, 704-705 (S.C. Ct. App. 2007) (internal quotation marks and citations omitted) (alterations in original); see also State v. Dickman, 534 S.E.2d 268, 269 (S.C. 2000) ("It is well-settled that a defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense."); State v. Langley, 515 S.E.2d 98, 101 (S.C. 1999) (holding that under the "hand of one, the hand of all" theory, "one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose"). Harris argues in a conclusory fashion that this charge constructively amended his indictment and denied him due

process.  He has failed to offer any precedent showing that the South Carolina law and procedure is violative of due process.

Based on the court's review of the parties' arguments and the record in this matter, Harris has failed to demonstrate that the trial court violated his right to notice and an opportunity to respond to the charges as required by the Sixth and Fourteenth Amendments.  See Hurtado, 110 U.S. at 538; Ashford, 780 F.2d at 407.  Therefore, Harris is not entitled to habeas corpus relief on this ground.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's amended motion for summary judgment (Docket Entry 51) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 17, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).